May I please record? My name is Elizabeth Dahlstrom. Elizabeth Dahlstrom on behalf of the appellant, Jason Salem. Mr. Salem has brought this appeal challenging the sufficiency of the evidence underlying the district court's finding that he violated the terms of supervised release by possessing burglary tools, a syringe, and methamphetamine within the meaning of California state law. The finding that he possessed methamphetamine, however, is the most important issue because it's the only allegation that gives rise to a grade B violation, and that's a higher sentencing range. The undisputed facts are as follows. Officer Nelson saw Mr. Salem taking clothing out of a trunk of a car near a laundry area of a hotel that was in a high-crime area. The officer approached Mr. Salem and asked if the car belonged to him. Mr. Salem indicated that it did not belong to him, but that he had permission to use it. The officer also required as to whether Mr. Salem was on parole, and he indicated that he was. And at that point, Mr. Salem started to walk toward the officer and then went to the car. The officer in the car at that time? No, Your Honor. I think the evidence showed that the officer was out of the car. Outside the car. Correct. Mr. Salem initially began to approach the officer and began to turn around as if to permit the officer to frisk him. But then when the officer went to grab his hand, Mr. Salem fled and ran away and was apprehended a short time later. After Mr. Salem was apprehended, the officer conducted a search of the car using a key that was found on Mr. Salem's person. During the search of the car, a 4-by-4-inch metal bowl containing what was later determined to be methamphetamine was found in the car along with a black pouch containing a syringe. Now, both of those items were behind the sun visor of the driver's side seat car. It was flipped up so that the officer testified he could not see those items prior to flipping down the sun visor, which is when they fell out. Also inside the car were dent pullers. The location of those dent pullers was somewhat contested during the district court proceeding, but in the government's final briefing it did clarify that those dent pullers were not visible from the exterior of the car. They were behind the floorboard in the back seat and could only be seen upon pulling forward the front seat of the car. Now, the officer also testified that he never saw Mr. Salem drive the car, sit in the driver's seat, sit in the passenger seat, open or close any of the doors, although he did add at one point that he thought one of the doors may have been open. He did never indicate that he saw Mr. Salem open that door. Officer Nelson did not see Mr. Salem actually possess any of the contraband, did not see him ingest any controlled substance, and did not observe any signs of recent drug use. And it was based on those facts and also the fact that Mr. Salem did not present affirmative evidence. It appears the district court made its finding that he possessed those items and thus violated the terms of his supervised release. Now, the parties agree that in order for Mr. Salem to have possessed the methamphetamine within the meaning of California law, he had to know of its presence, know of its character as a controlled substance, and have an intent to exercise dominion and control over that evidence. Both parties agree we're really dealing with constructive possession. We disagree, however, as to the legal sufficiency of the facts that are in the record and the inferences drawn therefrom as to whether they constitute a legal basis for finding possession of methamphetamine. Mr. Salem contends that the facts show at most that he had an opportunity to access the interior of the car where the contraband was found simply because he had a key. Roberts. He told the officer he had permission to use the car. That's correct. Well, that suggests more than as a storage closet. It suggests that. But the officer also testified he never saw Mr. Salem actually drive the car. It appeared the car was parked in a parking lot. Mr. Salem was only seen taking a few items out of the trunk, items that appeared to be laundry. And I think based on the facts that are in the record, it would only be a suggestion, a mere speculation. Well, not an unreasonable inference, perhaps. I mean, if somebody says I've got permission to use the car, does that ordinarily mean I'm storing things in the trunk or I've got the ability to drive the car away? Well, it does suggest that the person would have the opportunity to drive the car or the ability to drive the car. It doesn't, however, under the case law, establish dominion and control over that car, especially here where we know that the car was borrowed and that it was not stolen. Therefore, the owner would also have the right to access that car. Now, the burglary tools were somewhat more hidden. But the meth and the syringe, you say they were behind the visor on the driver's side. So if you pull the visor down, did they fall out or are they attached somehow? It appeared that when the officer searched the car and flipped down the visor, they fell out. He also testified, though, that prior to doing that, he could not see those items. They would not be visible to a person, for example, who had sat in the driver's seat of the car. If they were going to hide something in a car and then let somebody else use it, that seems to me to be a highly unlikely place to put something because somebody driving the car may actually need to flip down the visor and suddenly you've got meth in a package containing a syringe falling down on the driver. Wouldn't it be logical to suspect if someone was going to stash something there, it was the person who was driving the car and not somebody who's going to give it over to somebody else? It might be logical to infer that a person who was driving the car might put it there. But again, we have no evidence that Mr. Salem ever drove this car. Except that he said he had permission to use it and he had the key and he had access to it, and we have no evidence that anybody else had driven the car to that location. Correct. But I think when you compare it to some of the other cases that were cited in the briefs, like the Newman case, where the court drew inferences to establish certain elements of possession, there the defendant was actually in the car and was actually driving the car and the contraband, which was a single pill, was found in plain view. And I think those facts make those particular cases different from Mr. Salem's case where he was only seen outside of the car accessing a portion of the trunk. Does the record tell us whose clothes were in the car? I don't think the record establishes that fact, only that Mr. Salem was seen taking out some clothes near a laundry area. In any case, we submit that the facts show only that Mr. Salem had an opportunity to We don't know whether they were his clothes or somebody else's clothes. Correct, Your Honor. Correct. And I would also note that it doesn't appear that any of the contraband was found in the trunk where Mr. Salem was taking items out of the trunk. It doesn't appear that he would have been put on notice, perhaps, that there might be contraband in the car. Was there any evidence that the vehicle had been driven recently? Like, you know, heat on the hood or anything? No, Your Honor. There was no evidence one way or the other when the car had last been driven. And no one saw him in the car? No, Your Honor. No. We also submit there's no direct evidence to show that Mr. Salem even knew of the presence of the contraband in the car. Again, the drugs were not in plain view. And also, we submit that the fact that the officer did not observe any recent sites of drug use also negates any connection between Mr. Salem and the drugs that were found in the car. It would be much more likely that the drugs were his if he appeared to be on drugs at the time. We don't have that here. Now, the government contends in its briefing that Mr. Salem's flight from the scene supports a reasonable inference that he knew of the methamphetamine in the car. I would note, however, that during the district court's ruling, that was not an inference that was drawn by the court. However, Mr. Salem disagrees with the argument made by the government because it's actually not a single inference. It's an inference upon an inference. While it may be reasonable for the court to infer a guilty state of mind from a defendant's flight, the facts here in this case do not establish Mr. Salem's guilty conscience of any particular offense. I would also note that at the time of the contact, Mr. Salem had absconded from supervision two weeks prior. So it's logical to assume that the reason why he ran was because he feared there might be a worn-out for his arrest. And he did just admit to the officer that he was on parole. And for that reason, while it may be reasonable to draw an inference of some guilty state of mind, it requires another unsupportable, unjustified inference as to what the judge didn't draw that inference. No, Your Honor. It's a point raised by the government in briefing. He also, this defendant, as I recall, wasn't his father a law enforcement officer, a sheriff, used to beat him up all the time? I think there was some evidence of that in the pre-sentence report, Your Honor. I don't know that it was brought out as evidence during the evidentiary hearing. I thought this police officer grabbed him. And that's when he wanted to, didn't he reach out to grab him? Yes, Your Honor. The officer testified he reached out to grab Mr. Salem's left hand, and that's when Mr. Salem began to run away. He ran away. Yes. And the district court actually didn't find, he was accused of another violation. I don't know whether it was flight or obstruction or, which the district court declined to find as a violation. That's correct, Your Honor. He was, another allegation was that he resisted arrest, and much of the evidentiary hearing had to deal with that issue. In the end, the court found that this was basically a voluntary encounter. There was no reasonable suspicion on the part of the officer to conduct any sort of evidentiary type stop. And therefore, Mr. Salem wasn't obligated to respond to the officer's request. And for that reason, that violation. From a practical standpoint, it was clear that he had violated his probation for other reasons, right? Correct, Your Honor. He did admit to two other grade C violations. He merely contested these additional state law violations. And what is the practical effect of that? He violated his probation on the, for failure to attend substance abuse testing and so forth. I'm not familiar with their Category 1 and 2. The practical effect is that the sentencing range for the violations he admitted for his criminal history category resulted in a range of 8 to 14 months. He contested the possession of the methamphetamine, which was a higher violation, grade B. And when the district court found that violation, his sentencing range increased to 21 to 27 months. And he actually received 24 months. So the difference between the high range of the ones he admitted to and what he got would be what? Pardon me? I'm not sure I understand the Court's question. The difference between the high range of what he admitted to and what he actually received would be what? 10 months, Your Honor. 10 months. I see my time's expired. If there are no further questions. Well, give me those numbers again, would you please? Grade C violation, which he admitted, produced a range of 8 to 14 months. The grade B violations, which the district court found, resulted in a range of 21 to 27 months. And Mr. Salem actually received a sentence of 24 months. So he got 24 months. Yes, Your Honor. So there's about a 10-month difference there. Correct, Your Honor. Thank you. May it please the Court, Carrie Curtis Axel for the United States. With the Court's permission, I think I'd like to reiterate what the standard of review is in this case. The defendant began by talking about the possession of methamphetamine offense. And it's the government's position. In the defendant's counsel. Defendant's counsel began, Your Honor. Yeah. By talking about the possession of methamphetamine offense. And it's the government's position, and I would submit we have the better of the argument here, Your Honor, that the standard of review on that is clear error. It was a classic factual determination that the Court was required to and did make to determine whether or not defendant possessed the items of contraband in the car. Defendant does not really mount a legal challenge to the sufficiency of the evidence. What defendant really asked the Court to do is second-guess the Court's factual determination. As to the burglary tools, there is more of a legal element. Because as to that, the question is, what does California law require? And let me just take that hypothesis a step further. Suppose we would decide, based on the legal argument, that a violation of California law, as we define or understand the law, should not be sustained. What would that do to the determination as a whole? Well, I think the question you're asking, if I interpret it correctly, is whether or not … It's a two-part question. I should give you a separate opportunity to answer. But I want to get to both of them at some point. And one is, could you address the legal element in that burglary tool violation, the violation that was found? And then suppose for a moment that we determine that the legal standard is such that the district court's ruling should not be sustained. What happens at that point? Yes, Your Honor. Taking those in that order, I think you do raise that the statutory construction of the burglary tool statute is the one exception to the standard of review I mentioned. But I think that, in fact, defendant makes two challenges to the burglary tools. One is a challenge as to whether or not defendant possessed them. And I think still the Court's interpretation of that is subject to clear error as far as its factual determinations. The Court then may also address the legal issue of whether or not it's sufficient to prove a violation of that statute by constructive possession rather than actual possession, and that is a legal argument in defendant's brief. But moving to your second point, it's the government's position, and I realize in preparation for this that we did not address this in our brief, that the Court need not reach this issue. I think defendant has conceded here that the driver for the sentence, in fact, was the possession of methamphetamine offense, which was the only grade B violation. You have the discussion with defense counsel about 8 to 14 months versus 21 to 27 months. It was only the possession of methamphetamine offense that was a grade B and that raised the advisory guidelines policy statement range. If the Court had simply found the burglary tools, the admitted violations, or the needle and syringe, the range was 8 to 14 months, with a stat max of 24 months. So even on those violations alone, the Court could have gotten to 24 months. However, the range on those was only 8 to 14. And the Court carefully considered the possession of methamphetamine offense. There are two different hearings where he debated with defense counsel and myself  Let me ask you this. What if we determine on the burglary tools that actual possession is required? Reading of the statute requires actual possession. So that's out. Then we're left with the methamphetamine. And hypothetically, if it's determined that he did not have constructive possession of the methamphetamine, and that would be out, then where does that leave you? Where does that leave the case? Well, Your Honor, I do think it is necessary for the Court to reach the possession of methamphetamine offense. You just have to listen to my question. I'm sorry. Where does it leave you? Just assume for the moment that we rule against you on the meth. Then what happens? Well, I think in that instance, it would probably be appropriate for the Court to reconsider a sentence based on the admitted violations. If the Court would like me to address the possession of methamphetamine offense, I think actually the evidence is very clear. I think this is a classic constructive possession case as to the methamphetamine. And I think when you look at the California cases How is it a classic? Well, it's a classic case. What evidence is there that he knew that this methamphetamine was in the visor of the car? The California cases say, Your Honor, with respect to the second Tell me the evidence. The evidence of those is that he exercised dominion of the control of the car first and foremost. And the California cases say What's the evidence for that? He had a key, and he opened the trunk. And he took clothes out. And the laundromat was nearby, or the laundry room for the motel was nearby. And so he had the key, and there's really The evidence as far as the doors of the vehicle being open Is kind of equivocal, isn't it? I would submit, Your Honor, it Did the officer have anything in his report about the doors being open? The officer testified that one I asked you one question. Did he have anything in his report about it? It was silent as to the position of the doors. It was silent. Yes. He's on the stand, and he remembers that he thinks the door was open, right? I asked him a very How do you get him to possess this vehicle? There's no evidence that he was ever in the vehicle. The vehicle was positioned in a carport area of the motel Yeah. Where there were no other cars parked. Where the trunk was open. The door was open. Defendant was seen leaning He didn't know about the door being open. He testified that the door was open, Your Honor. And the court, in his findings, found the officer's testimony credible and truthful. So in making the factual The officer, when you say he, you're talking about the officer. The district court found the officer's testimony truthful and credible. And the officer testified How did that come in, that officer's testimony? He actually was presented and sworn as a witness. He presented a declaration, which is in the record. And he also testified as a witness and was subject to cross-examination. And the question I asked him, which was You asked him, what question did you ask him? Was a bit broader than what was in his report. I asked him to describe the area and the position of the car. And he did that. And he described how it was in this area of the carport where it was near a laundry area of the motel that the defendant was seen leaning into the car, taking his laundry out. And in a colloquy, in fact He was seen in the trunk. In the trunk. Not in the car. In the trunk. In the trunk. And a door of the car was open. And then, and then the, in fact, the court also pointed out that it could be argued that simply taking clothing or personal items from the trunk was an indication that it was his clothing, that he was actually doing his laundry from the car. There was no one else present. And then when, as defense counsel articulated, when the court, when the officer asked him to come over, he initially did so and then fled. And California law says two things. First, it says that it's substantial evidence alone that a defendant possesses methamphetamine that he knows of its nature. So the element of knowing of its nature is not particularly meaningful. The California law also says that you can infer. He knows it's there. He does have to know it's there, Your Honor. But you can prove that by constructive possession. And keep in mind the court also had him in. How do you prove that he knows it was there? We prove it by dominion and control over the car. He has dominion and control over the car. There's no evidence that he was ever in the car. There's no evidence that the car was ever driven by him. There's no evidence that the car was recently driven. Those latter two points are true, Your Honor. Yeah. Other than that, though, I would concede. He's back there, and he opens up the trunk, and he takes some clothes out. And, you know, the inference is, well, he's going to the laundry, and he's going to wash his clothes. Or do we have any evidence as to who the owner of the car was? No, the officer was not able to determine that. We don't even know that, do we? No, but. We know he doesn't own the car. The context of it was a fair inference. He doesn't own the car, this young man. True. He doesn't own the car. So he said he had permission to use the car, and then, you know, he takes the clothes out. So how do you get him in the car? How does he know that methamphetamine is up on the visor over there? Because a person driving the car, Your Honor, I think it is a reasonable inference. But we don't know whether he drove the car. It's an inference that he drove the car. He possessed the keys. You know, a lot of inferences. What's the burden of proof here? Preponderance of the evidence, Your Honor. Preponderance of the evidence. So, I mean, I just don't see whether there's any evidence here that he possessed the methamphetamine. You have to make all kinds of assumptions. But I'd also like to address the position of the burglary tools, because the spark plug items were in on the backseat themselves, and they are very specialized pieces of sawed-off porcelain, as you can vaguely see in the pictures that are submitted with the declaration. Better pictures were presented to the district court. Also present in courtroom were the actual Slim Jim slide hammer items, which are very large items, and the officer testified were visibly sitting on the floorboard. The only clarification to that was later whether it was a plain view issue. And he said it was visible sitting on the floorboard to an occupant at the car. But they're very large items. One is 18 inches long. The other is 12 inches long. What is the significance of it being in plain view? On this appeal, nothing. The only issue was whether the exclusionary rule applied at a supervised release revocation proceeding. And as you'll see from the overall record, the Court spent a lot of time with this case, heard a lot of arguments, listened to a lot of briefing. This was one of the issues that he considered, and we were able to present authority from this circuit showing that the exclusionary rule does not apply. So the plain view discussion is not relevant on appeal. Is there any indication that in order to take this close to the laundry, he would have had to have driven the car there? Was he staying there or what? He did say that he was staying at the motel. He told the officer that he was staying at the motel. That also is in evidence. Other than that, we don't know how he got there. But he said that he was staying there, and, again, he had the keys and was the only person using the car at that point in time. But wasn't his friend in the motel as well? No, Your Honor. There's no evidence of that. How do you know that? There's no evidence of that. Well, there's no evidence. The officer never even went to the motel to check the register to see whether this kid was there or not. Right? That is also not. There's nothing in the record, Your Honor. Sloppy work, wouldn't you say? I would not say, Your Honor. What would you say? What would you say? She says it's enough. I would say, based on his fight, it's enough. Oh, and the one thing other I wanted to point out is that the Court, the defendant did admit to his probation officer that he had used methamphetamine recently, which in this context of a supervised release revocation proceeding, the Court also could consider. Is there anything that the Court would like me? I see I'm out of time. What did the judge say was considering that? The judge did not specify what he was considering. There is several colloquies about the possession issue and the way. Didn't the public defender have to ask the judge, aren't you going to make a finding on this? Wasn't that in there? The only finding he made was as to the credibility of the officer, after which he determined that he found the possession of methamphetamine, needles, syringe, and burglary tools. What significance do you attach to his plea? Your Honor, I think flight is sufficient to infer the second and third elements of the California, the violations of all three provisions of California law. I think California law is clear that you can show knowledge of contraband by flight, both knowledge of contraband and the presence of contraband by flight. And so I think that the What is that instruction? What does it say? The People v. Williams is the California Supreme Court case. Give me the jury instruction. The jury instruction is Cal Flight. That's CALJIC 2.52. It is not in the jury instruction, Your Honor. What? It is CALJIC 1200 that goes to illegal possession and constructive possession. Well, CALJIC has 2.52, flight after crime. Do you know something that I missed, Your Honor? No. It's all right. I can only point you to People v. Williams and People v. Ekstrom as authority for that proposition. If the Court doesn't mind. Here's what that instruction says. The flight attempt, well, the flight of a person immediately after the commission of a crime or after he is accused of a crime is not sufficient in itself to establish his guilt. That's part of the instruction. Did the government say that flight by itself was the basis for the inference it sought the Court to draw? No, Your Honor. But you're relying heavily on it, aren't you? We're relying it for What is the other evidence? Well, the evidence is the factual inferences that Your Honor has discussed concerning the possession of the car and the constructive possession of the car, as well as defendant's admission to using methamphetamine. Well, so he said he used methamphetamine. What does that prove? Well, the Court can use that also to infer that he knew of the presence and the nature of the contraband of the methamphetamine itself. I don't understand that. So he said he used it. He said, yeah, I smoke cigarettes. And there's some cigarettes hidden up in the visor. And he's supposed to know there's cigarettes up there. I think if we get to the element of does defendant know the nature of the contraband and the presence of the contraband, I do think the fact that this is his substance of choice that he has admitted to using and, in fact, was able to But that's the second step. First, you have to show he knows it's up there. Well, again, I would submit on the evidence in the record concerning constructive possession of the car. Okay. Thank you. Thank you. Your Honor, I do acknowledge that I used all my time. If I may just respond to a few points made by the government. The government pointed out that You're left-handed, are you? Yes, I am. If you're left-handed, you get two extra minutes. I'll take them. Many of us are out. Go ahead. The government pointed out that the porcelain pieces were in plain view of the backseat. I'd just like to note that that evidence is at page 19 of the excerpt of record, and it does indicate that they were also inside a leather pouch. So they were not necessarily visible to someone peering through the window. Second, as far as What difference does that make? I think it would make a difference because the government has argued that Mr. Salem could see any items of contraband in the car, and he's still using the car. It can be inferred that it's his contraband. My point is, is that Mr. Salem, based on the evidence in the record, can see a black pouch sitting on the backseat of the car, and it's not immediately obvious what it contains or that it's a burglary tool. And I just would like to clarify that point. How do they use that porcelain? I believe they use it to crack the window. They put the piece of porcelain near the window and then use a hammer to crack it silently. I believe that was the testimony of the officer. Learn something every day. That's right. Also, I'd like to address the basis for the Court's ruling. This Court appeared to have some questions on what evidence the district court relied on. I'd point out that at page 160 of the record, the district court indicated it was only relying on the testimony of the officer and also the fact that Mr. Salem didn't offer any evidence in his defense. The district court did not indicate that it was relying on Mr. Salem's flight or any admissions that he made to the probation officer. And finally, if I may, with regard to the flight instructions, I don't believe either of the parties cited the California jury instruction for flight, but we did raise in our brief the case of United States v. Silverman, which does discuss the propriety of flight instructions. And it says it's only appropriate if there's evidence sufficient to support a chain of unbroken inferences from the defendant's behavior to the defendant's guilt of the crime charged. And there are at least four of those connections. One, there must be a connection from the defendant's behavior to flight, from the flight to consciousness of guilt, from consciousness of guilt to consciousness of guilt of the crime charged, and from consciousness of guilt of the crime charged to actual guilt. And I would submit here that this case does not meet any of those four factors. Am I correct that we'd have to find the methamphetamine possession in order to get the additional 10 months, or could that be in burglar tools and all the other things? No. The methamphetamine violation is the only thing that supports a sentencing range higher than what was already admitted. So that's really what we're talking about. It's a dispositive issue, yes. Let me pose to you the question that I really put to the government. I don't know where we're going to wind up here, but suppose we buy onto the legal argument, burglary tools get taken out. Do you agree with the government that burglary tools are really a side event that is really about the meth? Yes, Your Honor. Correct. If there are no further questions, I would submit. Thank you. Okay. Thank you.
judges: Hug, Pregerson, Clifton